## J. LOBIT ET AL. V. M. L. McCLAVE.
### No. 704.

1. **Sale of Land—Specific Performance and Rescission.**—A sold land to B by an executory contract providing for title to be made when B completed the deferred payments, and also giving a power of sale to A in case of default in the payments. Because of such default, there was a sale of land under the power, B protesting against the sale because of a deficiency in the acreage, and also bidding on the land, which was, however, bought in by A. *Held*, that B was concluded by the sale, and was not entitled to a specific performance of the contract upon an offer to make the deferred payments, nor was he entitled to a rescission and return of his cash payment.

2. **Same—Deficiency in Amount.**—The land having been sold to B by the acre, he was entitled, on an adjustment of the balance between him and A, to an abatement for the deficiency in acreage.

3. **Same—Sale in Bulk.**—At the public sale under the power, the land was sold in bulk as so many acres, described by metes and bounds, and A bought it, knowing that by measurement there was a less number of acres, and that B claimed that the title was good only as to a still less number. *Held,* that A was not entitled to have an abatement from his bid because of such deficiency in the acreage.

4. **Same—Damages for Noncompliance with Bid.**—At the public sale under the power B refused to comply with his bid, which was for $1000 more than the subsequent bid at which the land was struck off to A. *Held,* that as the amount bid by A exceeded the amount of his claim against B on final adjustment, B was not liable for his noncompliance, even had his bid complied with the statute of frauds, as A was not damaged thereby.

ERROR from Galveston.     Tried below before Hon. WILLIAM. H. STEWART.

*James B. & Chas. J. Stubbs,* for plaintiffs in error.—1. The defendant did not renounce the contract and demand a restoration of the partial payment because of the alleged deficiency, or for any other reason, until after this suit was brought, and he was then estopped by the sale which had been made. He failed to make the deferred payments, or tender the amount thereof, for the diminished quantity of land which he conceded plaintiffs owned and could convey, and thereby forfeited his claim to the land; and the sale under the contract foreclosed any equity of redemption that defendant may have had, and also forfeited the amount previously paid by him. Lundy v. Pierson, 67 Texas, 233; Roberts v. Lovejoy, 25 Texas Supp., 437; Summerhill v. Hanner, 72 Texas, 227; Green v. Chandler, 25 Texas, 148; Perry v. Rice, 10 Texas, 367; Walling v. Kinnard, 10 Texas, 507; Taylor v. Ashley, 15 Texas, 50.

2. If defendant's liability was reduced one-fourth by reason of the shortage claimed to exist, plaintiffs should receive the benefit of a like allowance upon their repurchase of the tract. O'Connell v. Duke, 29 Texas, 311; Smith v. Fly, 24 Texas, 350; Ayers v. Dupree, 27 Texas, 606.

3. The court erred in refusing to allow plaintiffs' claim of $1000 against defendant, being the difference between his bid when the property was first exposed for sale and the price which it subsequently realized. Plaintiffs were entitled to this difference, as they were compelled to take the property to account for $1000 less than the sum which defendant undertook by his bid to pay; and he was clearly liable for this amount. 1 Am. and Eng. Encyc. of Law, 999.

4. When a vendor points out the land and shows its boundaries pending negotiations for a sale, and makes a sale in gross, each party having an equal opportunity to inform himself regarding the quantity, the purchaser can not claim an abatement of the purchase money on account of deficiency, if the vendor has neither made a fraudulent

representation, nor said anything calculated to deceive an ordinarily prudent purchaser.   Wheeler v. Boyd, 69 Texas, 293.

*Joseph H. Wilson* and *Russell W. Houk,* for defendant in error.—1. When it appeared that plaintiffs were unable to comply with their contract with defendant, and defendant demanded a rescission of same, the court should have decreed a rescission.   Harris v. Shaffer, 23 S. W. Rep., 979; Estell v. Cole, 62 Texas, 700; Galbraith v. Reeves, 82 Texas, 357; Kauffman & Runge v. Brown, 83 Texas, 41.

2.   When defendant is not in default in complying with his contract, and plaintiffs sell him out over his objections and protests, while plaintiffs are unable to perform their part of the contract, defendant is not precluded by said wrongful act of plaintiffs from demanding a rescission of the contract.   The doctrine of estoppel is not applicable to this case.   Dunham v. Chatham, 21 Texas, 248; 2 Willson's C. C., sec. 381.

3.   Where a vendor sells out his vendee's interest in a tract of land under a power of sale in the contract of sale, and buys the tract himself in gross for $9000, after he has been notified by the vendee at the sale that the tract contains but 750 acres, he is liable for that amount, although the tract contained but 750 acres instead of 1010.03 acres, as supposed by vendor.   Wier v. McGee, 25 Texas Supp., 31; O'Connell v. Duke, 29 Texas, 311; Wheeler v. Boyd, 69 Texas, 293; Rich v. Ferguson, 45 Texas, 396; Dalton v. Rust, 22 Texas, 154.

4.   Sales by auctioneers must comply with the statute of frauds. Brock v. Jones, 8 Texas, 78; Crutchfield v. Donathon, 49 Texas, 696; 1 Am. and Eng. Encyc. of Law, 1000.

Sales made by sheriff or other public officer not made immediately under order of court are within the statute.   Hughes v. Jones, 9 M. & W., 372; Robinson v. Garth, 6 Ala., 204; Ennis v. Waller, 3 Blackf. (Ind.), 472; Evans v. Ashley, 8 Mo., 177; Simonds v. Collins, 2 Caines (N. Y.), 61; 8 Am. and Eng. Encyc. of Law, 672, note 3.

GARRETT, CHIEF JUSTICE.—The plaintiffs in error brought this suit against the defendant in error to recover originally an alleged balance on certain promissory notes executed by the defendant, Mc-Clave, for the purchase money of certain land, a part of the S. F. Austin league, situated in Galveston County.   The supplemental petition showed, that in accordance with an executory contract for the sale of said land the same had been sold at public outcry and the proceeds of said sale applied to defendant's notes, and that the suit was for a balance due thereon.   Defendant answered, that the plaintiffs' title to the land which he had contracted to buy was clouded by adverse claims, and that there was a deficiency in the acreage thereof. He prayed for a rescission of the contract and the restoration of the purchase money already paid by him, and, in the alternative, that he be allowed a reasonable time in which to perform the same, and for

general relief. In their supplemental petition, in which plaintiffs set forth the sale of said land at public outcry, they alleged, that at said sale the land was first struck off to the defendant at a bid of $10,000, with which he refused to comply, when it was again put up and sold to plaintiffs at their bid of $9000; and they asked judgment also for $1000 damages for the failure of defendant to comply with his bid.

The case was submitted to the court without a jury, and on November 27, 1893, judgment was rendered in favor of the defendant for the sum of $2020, for the reversal of which, plaintiffs have brought the case to this court upon writ of error, and have filed a bond for that purpose. The defendant also complains of the judgment on cross-assignments of error, because he was denied the right of rescission, and judgment for the payment made by him with interest; also, that the court rendered judgment for less than defendant was entitled to recover, and against defendant for damages.

There is no statement of the conclusions of fact and of law reached by the judge who tried the case below, hence we can not tell upon what conclusions the judgment is based; but from an examination of the record, we find that the following facts were shown:

*Conclusions of Fact.*—1. On May 13, 1890, the plaintiffs, F. McC. Nichols and J. Lobit, entered into a contract with the defendant, M. L. McClave, whereby they agreed to sell and convey to him "1369.13 acres out of the S. F. Austin league," situated in Galveston County, Texas, described by metes and bounds, for a consideration of $4278.53, in cash, and the three promissory notes of the said McClave, payable and due respectively one, two, and three years from date, for the sum of $4278.53 each, with annual interest at the rate of 8 per cent per annum. Plaintiffs agreed to execute to the defendant, or to such person or persons as he might designate, a sufficient warranty deed for the land upon the payment of the notes; and in order to enable the defendant to sell in small tracts, certain stipulations were made for conveyance by them to purchasers not necessary to be set out. It was agreed, that in case of any default by the defendant, the plaintiffs were at liberty and fully authorized and empowered to sell the property to the highest bidder for cash, at public outcry, in front of the court house door of Galveston County, Texas, after giving notice of the time, place, and terms of sale by advertisement in some newspaper, published in said county of Galveston, for at least twenty days prior to the day of sale, and also public notice thereof as is required by law of sales under execution; and to receive the proceeds of said sale and apply the same first to all expenses of sale, and then to the payment of all the above described notes that may then be due, together with interest, the remainder, if any, to be paid to the defendant. The cash payment was made, and the notes were executed and delivered by the defendant as recited in the contract.

2.  On May 14, 1891, the parties entered into a supplemental agreement that, the acreage of the land being only 1010.03 acres instead of 1369.13, the conditions of the contract should be carried out as though the correct acreage were expressed therein, and the notes received credit for the difference in acreage at the rate of $12.50 an acre, as per a statement which was annexed.  Plaintiffs also, at the request of defendant, gave an extension, orally, of the note then due for one year.

3.  When the time arrived for the payment of the first note, as extended, and of the second note, plaintiffs notified the defendant that no further extension could be granted.  Several letters passed, in which plaintiffs demanded payment and the defendant craved indulgence.  The defendant, who resided in Michigan, came to Galveston and urgently requested delay.  He at last told plaintiffs that he had reason to believe that there was not more than 750 acres in the tract of land.  Plaintiffs asked him to pay the notes on that basis until the quantity could be ascertained, but did not offer defendant any credit for excess of cash payment.  Finally the plaintiffs advertised the land for sale at public outcry, on Tuesday, July 5, 1892, in accordance with the contract, describing it, as it was described in the contract, as 1369 acres, etc., giving the metes and bounds.  Defendant appeared at the sale and protested against its being made, on the ground that there was a failure of title to a material portion of the land, on which account he claimed a rescission of the contract.  But plaintiffs proceeded with the sale, and the land was struck off to the defendant at his bid of $10,000.  Defendant failed to comply with his bid, and the land was immediately offered again, when it was struck off for $9000 to plaintiff's attorney, who, upon a deed having been executed to him, conveyed to the plaintiffs.  The land was worth more than defendant's bid, and was at the time of the trial below.

4.  At the time of the sale of the land at public outcry, one Langermann had a suit pending for 484 acres of said land on the east side, which at the time of the trial below was pending on appeal in this court from a judgment adverse to him.  And, at the time of the trial of this suit below, there was a suit against plaintiffs involving 250 acres on the west side.  It was not shown that any sales of the land had been defeated by reason of clouds upon the title, or that the defendant ever claimed a rescission of the contract prior to the day of sale.

5.  The land was sold to the defendant at $12.50 an acre.  There was a further shortage in the acreage than that adjusted by the settlement of May 4, 1892, and we find that the tract contained only 746.78 acres.

*Conclusions of Law.*—Plaintiffs by their suit have sought to recover of the defendant an alleged balance due on his notes for the land, after giving him credit for the amount of their bid at their foreclosure sale, and in addition thereto, $1000 as damages for his failure to comply with his bid.  They complain of the judgment of the court below, because,

as they say, it is based on the ground that there is a deficiency in the quantity of the land with which they are charged, when their bid for the land is not abated at the same ratio. They have not sought to set aside the sale, and we agree with them that the defendant is concluded by it, and can not now have a specific performance. Defendant is entitled, however, to whatever excess there may be of the amount for which the land sold at the foreclosure sale over the balance due by him as he would be liable for the deficiency. Plaintiffs must account for the land at $9000, the amount of their bid. In an adjustment of the balance due by the defendant on the purchase money, he is entitled to have an abatement thereof for the deficiency in acreage. This right does not depend on defendant's right to have a specific performance, or upon the warranty in the deed, after an eviction, but upon the fact that there has been a failure of the consideration. The defendant bought by the acre, and is entitled to a credit to the extent of the deficiency. When the land was sold at public outcry, it was sold in bulk as a tract of 1369 acres by metes and bounds, with the knowledge on the part of plaintiffs that, according to measurements, it contained only 1010.03 acres, and that the defendant claimed that plaintiffs only had title to about 750 acres. The sale at public outcry, foreclosing defendant's equity of redemption, was a sale of the land in bulk, and in the adjustment plaintiffs must be charged with the full amount of their bid.

Defendant is not liable for the damage sought to be recovered, for two reasons. In the first place, the sale came within the statute of frauds, and there was no memorandum thereof in writing. It is contended that a receipt for earnest money was prepared, but it is not shown to have been a sufficient memorandum. Brock v. Jones, 8 Texas, 78. Again, the plaintiffs were the purchasers of the land, and suffered no damage, as it was not only shown to be more valuable than defendant's bid, but also, that the bid at which they bought was more than the amount of their debt.

The evidence was not sufficient to establish title in the plaintiffs by limitation, and it satisfactorily appeared that the acreage is not more than as above stated, hence the plaintiffs are liable to the defendant for the difference between their bid and 746.78 acres at $12.50 an acre, in accordance with the contract, less the amount of defendant's cash payment, with 8 per cent interest for one year for such part of the cash payment as should be carried to the credit of the first note.

Upon the cross-assignments of defendant in error, we are of the opinion that he has not shown a right to have the contract rescinded and to recover the amount of his cash payment with interest. Several of the assignments pertaining to the invalidity of the foreclosure sale are not supported by bill of exception showing that objections relied on were made in the court below.

We will, in response to other cross-assignments, reverse the judgment of the court below, and here render judgment in favor of defend-

ant, in accordance with our findings above made, and for all costs of both courts.

*Reversed and rendered.*

Delivered November 15, 1894.